D. M. GRIFFITH *v.* LAFAYETTE BEACKER, ET AL.

**Insolvency—Preference of Creditors—Sale of Real Estate—Innocent Purchaser.**

Where an insolvent debtor and his surety sell and convey the insolvent's real estate, to prefer debts upon which the surety is bound, the surety knowing of such insolvency and the purpose of the sale and receiving the consideration to carry out such purpose, the proceeds of such sale are subject to the payment of general creditors.

**Sale of Real Estate—Innocent Purchaser.**

Where a conveyance of real estate is made by an insolvent in contemplation of insolvency and for the purpose of preferring a creditor, while the effect is to transfer all the property to all the creditors, whether the preferred creditor knew the purpose or not, still, where the purchaser is innocent and pays a fair consideration, the sale will not be set aside, but the court will direct the proceeds of such sale to be applied to pay all the creditors.

APPEAL FROM DAVIESS CIRCUIT COURT.

December 10, 1874.

OPINION BY JUDGE PRYOR:

It is a fact conceded in argument, and if not, appears clearly from the record, that in May, 1870, S. M. Wing was not only embarrassed financially, but insolvent. He made an assignment during that month to W. T. Brown of all his estate for the benefit of his creditors, and with a view of satisfying their demands so far as his

property could be made available. A few weeks prior to this conveyance in trust, he made a sale of an undivided moiety of a tract of sixty acres of land to W. H. Griffith, for the sum of six thousand dollars, four thousand dollars of which, as recited in the deed, was paid in hand, and the balance to be paid in two equal instalments. W. H. Griffith, the purchaser of the land, was not a creditor of Wings, and seems to have purchased the land in good faith and for a full and fair consideration.

The appellees, previous to the sale made by Wing to W. H. Griffith, had instituted an action in the Daviess circuit court to recover of Wing a large sum of money, and after the conveyance of the land to W. H. Griffith by Wing, filed an amended petition, in which they allege that the sale to W. H. Griffith was made in contemplation of insolvency, and with a design to prefer creditors, that is to prefer the said Daniel M. Griffith, who is made a defendant to the amended petition; that no money whatever was paid by W. H. Griffith to Wing, as the deed recited; but that the said Daniel M. Griffith was bound as the security, drawer or endorser of said Wing for the recited consideration paid, of $4,000.70, or that the said Wing was indebted to him in said sum, or a part of it; and that the real consideration was the assumption, settlement or payment of that sum, or a part of it, by the said W. H. Griffith to and with the said Daniel M. Griffith as an indemnity against his, the said Daniel's, liability for Wing, or said Wing's indebtedness to him; and the said W. H. and Daniel M. Griffith are called on to state and disclose the true nature of the transaction.

The parties all lived in the same town or its vicinity when these transactions took place. Daniel M. Griffith was liable jointly with or as endorser for Wing to a large amount. He sold the land to W. H. Griffith for Wing, took the notes for the deferred payments, as well as the drafts or bills representing the four thousand dollars, into his own possession. The notes were endorsed to him by Wing, and the acceptances payable to his, D. M. Griffith's order. The bank cashiers were directed when the paper matured upon which the appellant was liable jointly with Wing, to apply these acceptances of W. H. Griffith to its payment. Anderson, one of the cashiers, is of the opinion that W. H. Griffith directed the application of the money; but in this he is evidently mistaken, as W. H. Griffith swears that he had nothing to do with the paper after the delivery to D. M. Griffith except to renew, and that he never knew how the money was to be applied; and besides the acceptances being payable to the or-

der of the appellant, he alone could direct the application of the money.

The notes for the deferred payments were assigned to appellant about the same time, and he admits in his answer that this was done to pay debts for which they, Griffith and Wing, were jointly liable, and had contracted as partners, and that he had the right so to apply the money, for the reason that the land sold was partnership property. That the land sold belonged to them as partners, or that the debts owing by them were partnership debts, is in no manner sustained by the proof; but on the contrary, the manner in which this sale of the land was made, and the notes and acception given, conduces clearly to show that appellant was endeavoring to save himself from loss by applying the proceeds of the land to the payment of debts for which he was jointly liable with Wing. If Wing was regarded by appellant as solvent, why were the notes transferred to pay their joint liabilities, and why were the acceptances made payable to the order of appellant, who was not entitled to any part of the money?

Wing was a good business man, understood fully the nature of business transactions; and there was no security for the transfer of the notes, and certainly none for making the acceptances payable to the order of appellant, when the paper in bank had not matured, and he is as much liable for the bank debts as Wing. Wing had been protected in the bank of which appellant was a director for a large sum of money ten days prior to the time at which these transfers of the notes were made. The cashier of the bank was apprised of Wing's embarrassments, and appellant being a man of business habits, and in the habit of endorsing for Wing, must have had from the manner in which the transaction of sale took place, some reason to believe that there was a necessity for having indemnity by reason of this joint liability. Yet it is a little strange that Wing and Griffith should have been paying their debts, or preparing to meet them before maturing, when Wing was then under protest in bank.

But does this knowledge, or want of knowledge on the part of the creditor preferred, affect his liability to restore what he has received under the act of 1856? Such has not been the construction of that act by this court; but it is made to depend upon the insolvency of the debtor, and the object the latter had in view in making the preference. If made in contemplation of insolvency and for the purpose of preferring a creditor, it has the effect to transfer all the property to all the creditors, whether the preferred creditor knew the purpose

of the debtor or not. *Temple, Barker & Co. v. Poyntz, et al.,* 2 Duvall 276. In this case the sale was made by appellant for Wing to W. H. Griffith in order that the proceeds of the sale might be applied to the discharge of the debts owed jointly by appellant and Wing to the banks, as well as other creditors. This was the purpose Wing had in view, and the facts also show that appellant was not only aware of this purpose, but was the chief instrument in accomplishing it. The appellant no doubt supposed that he had the legal right to have the debts preferred in the manner in which they were discharged, and whilst there is no moral wrong in securing such a preference, still, by the express language of the statute, if made by the debtor in contemplation of insolvency and with the design to prefer, it subjects all of his estate to the benefit of creditors.

The sale of the land in this case was made with the view of applying the proceeds to the liabilities of Griffith and Wing. The petition charges that the consideration for the sale was to indemnify appellant in his liability for Wing, and to prefer him as a creditor; and although the sale of the land is asked to be disregarded, and to operate as a transfer of the debtor's estate, the chancellor is also asked to make all such orders as will secure the application of the assets of Wing to the payment of the debts of creditors, and for other proper reliefs. Appellant is a party defendant to the pleading. The sale, from the proof, although made in contemplation of insolvency, was made to an innocent purchaser, and the preferred creditor who made the sale for this purpose of preference, by the consent of the debtor, instead of getting the land, takes the proceeds; and upon such a state of facts, although the sale of the land may be upheld, the creditor, who is a party defendant, making the sale and applying the proceeds so as to credit the preference, is clearly embraced by the statute. In the case of *Temple, Barker & Co. v. Poyntz,* 2 Duvall 276, it was adjudged that the sale was not made in contemplation of insolvency, and further that there was no proof that any assignment of the proceeds were made in contemplation of insolvency, or that the assignees so understood.

In the case of *Davis v. Jackson, etc.,* the money was loaned to pay the debt on which Davis was liable, the loan made at the time the mortgage was given. Suppose in that case, Davis, instead of loaning the money, had taken the proceeds of Hawkins's property and paid it. Can there be any question but what it would have been within the statute of 1856? We think not. The allegation is, that the sale was made to prefer appellant. This fact is clearly estab-

lished, and when shown, the prayer for general relief authorized the judgment.

Judgment is *affirmed* on both the original and cross-appeal.

*Sweeney & Stuart, for appellant.*
*G. W. Williams, for appellees.*

